

# Financial Package

August 11, 2025

To: Musaddiq Rehman

From: Partnership Operations

Enclosed is a summary of your financial interests in the EY partnership (the "Firm").

The information is based on a September 30, 2025 Separation Date. For purposes of this memorandum, the term "partner" will refer to both partners and principals.

Your cash earnings allocation for the period June 29, 2024 to June 27, 2025 is $580,000. Your cash earnings allocation for the period June 28, 2025 to September 30, 2025 will be $145,000. You will receive transition payments as outlined on the following pages. These financial arrangements are contingent upon your signing and returning to us a copy of the attached Release and Agreement (the "Release").

You will receive a settlement of your accounts with the Firm no later than 240 days following your Separation Date and you will receive additional information from Partnership Operations concerning your FY25 year-end statement of account in October 2025 and FY26 year-end statement of account in October 2026.

<u>Offer and Acceptance</u>

The terms and conditions in the Release include the offer of certain payments and benefits that exceed the entitlements under the Agreement of Partners and Principals of Ernst & Young U.S. LLP (the "APP"). These additional elements include:

- Outplacement assistance for twelve months following your separation, paid for by the Firm;
- Active service through your Separation Date;
- One transition payment in excess of the six months outlined in Section 11(b)(i) of the APP.

These additional elements are designed to assist you with your transition and represent an offer for your consideration in exchange for your signature and return to us of the Release. We encourage you to review the details of this package and to discuss them with a member of our EY financial planning team (POF Financial Services) and/or your own financial and legal advisors. To set up a meeting with a member of the partner financial planning team please email pof.financialservices@ey.com. Alternatively, they can be reached at 201 872 5808. Our planners will assist you with understanding the retirement, benefit and financial information provided within your financial package.

In order to receive the additional consideration described above, you must sign (electronic signature is acceptable) and return a scanned copy, including all pages of the Release to the Partnership Operations mailbox at partnership.operations@ey.com within forty-five (45) days of the date you received email notification of access to the package (the "Notice Date") and you must not revoke the Release within the seven (7) days that follow your signature on the Release.

If you choose not to accept the Release, please advise us within the forty-five (45) days. However, if you do not timely return the Release or you revoke your acceptance, you will be deemed to have rejected the offer of the additional sums and benefits, the offer will expire, and your separation from the Firm will then become immediately effective. The time period from the Notice Date to your rejection of the Release, or your revocation of your acceptance of the Release, will count against the 6-month notice provision in Section 11(b)(i) of the APP.

In the event you decline this offer or are deemed to have declined the Release, you will receive the remaining balance of the six months' notice period as described in section 11 (b) (i) of the APP.

For example, this means that should you be separated forty-five (45) days from the notice date due to failure to timely execute and return the Release, or your revocation of your acceptance of the Release, the Firm will thereafter make monthly payments to you via direct deposit for a period of four and one half months which is the equivalent of the remaining notice period balance; should your final separation date be later than the end of that forty-five (45) day period, the amount of the remaining monthly payments will be reduced accordingly.

The circumstances leading to, information regarding, and terms of, your involuntary withdrawal from the Firm are highly confidential information within the meaning of the Firm's partnership agreement ("Confidential Information"). The Firm will not discuss your personal circumstances with anyone other than those who have a clear and legitimate need to know. Similarly, you must hold all Confidential Information in the strictest confidence, in full compliance with your obligations under the Firm's APP. This restriction does not preclude you from discussing your separation with close family members and those legal and financial advisors with whom you choose to consult. However, it is incumbent upon you to communicate to these individuals their own obligations to maintain the strict confidentiality of this Confidential Information. If you have any questions about these confidentiality requirements or any ongoing professional obligations, please consult your Talent Leader.

Your obligation to maintain the strict confidentiality of Confidential Information is an important condition and fiduciary obligation of your being an EY partner or principal and remains in effect following your separation from the Firm. Your failure to adhere to the strict confidentiality of these matters may impair the financial and other terms of your separation and withdrawal from the Firm.

The Firm requires that you cease holding yourself out as a current partner/principal of EY in any manner, including on social media platforms such as LinkedIn, effective with your Separation Date.

**Musaddiq Rehman**
CNS – Jacksonville
Separation as of September 30, 2025

**Fiscal Year 2025 and 2026 Earnings:**

Your cash earnings allocation for the period June 29, 2024 to June 27, 2025 is $580,000. Your cash earnings allocation for the period June 28, 2025 to September 30, 2025 will be $145,000. These allocations, less applicable mid-month, end-of-month, quarterly tax advances, and other applicable advances will be reflected in the respective fiscal year's Statement of Account that you will be receiving after your Separation Date.

Please see Attachment 1 for additional details.

**Transition payments:**

If you sign and do not revoke your acceptance of the Release, you will receive seven transition payments of $48,400 per month beginning October 1, 2025 (payments are made on the 15th of the month). For tax purposes, these payments will be treated as guaranteed payments and reported as such on your Schedule K-1. These amounts will be subject to self-employment tax and multi-state taxation but will not carry with them incremental phantom income items such as the meals and entertainment disallowance.

**Pass-Through Entity Tax (PTET) and Composite Tax**

The Firm elected into the Pass-Through Entity tax in certain states (Illinois, Massachusetts, New Jersey, New York, Virginia, and California). For states other than those where the Firm elected into PTET, you are included in the Firm's state and local composite tax returns. The Firm has or will pay PTET, foreign, and composite state and local taxes on your behalf, and those amounts are recoverable as part of your settlement. A tax reserve will be established in a restricted current account to cover your share of CY25 through CY26 PTET, foreign and composite state and local taxes. The tax reserve will continue to earn interest at the current account rate. Any excess, plus earned interest, will be paid to you once all tax payments are made for the final tax year in which you receive transition payments. For example, if you receive transition payments into CY26, the tax reserve will be released after the final tax payments are made by the Firm in 2027.

Please see Attachment 2 for your estimated PTET charges and composite taxes that will be reserved against your final settlement.

A member firm of Ernst & Young Global Limited

**Capital:**

Your capital of $206,000, net of your capital loans of ($60,800) will be transferred into your current account as part of your final settlement.

**Current Account:**

Any remaining balance in your current account, as well as the undistributed portion of your FY25 and FY26 allocations, less the restricted amounts as shown in Attachment 1, will be available no later than 240 days following your separation from the Firm, per the Agreement of Partners and Principals.

See Attachment 1 for your estimated proforma settlement.

**Deferred Income Account:**

| | |
|---|---|
| 2024 Mandatory Deferred Income: | $ 14,278 |
| 2025 Deferred Income | TBD |

This amount will be credited to you in our settlement of your accounts with the Firm, and it will be included in your 2025 Schedule K-1.

**Settlement of Accounts:**

You will receive a settlement of your accounts with the Firm no later than 240 days following your separation.

**Accumulated Book/Tax Timing Differences:**

Over the last several years, partner/principal earnings have been affected by certain Book/Tax Timing Differences which have resulted in deferrals or accelerations of taxable income. As these are timing differences only, a partner/principal's cumulative tax liability over time is not impacted– just taxable income relative to distributable income from year to year. When a partner/principal retires or otherwise withdraws from the partnership, any Accumulated Book/Tax Timing Difference is reversed.

In your case, your remaining Book/Tax Timing Differences balance is $220,414. Your Book/Tax timing difference in the amount of $220,414 will be reversed in calendar year 2025. The reversal of these balances will result in a reduction of your Schedule K-1 income for 2025.

See Attachment 3 for the impact on your 2025 taxable income.

**Estimate of Calendar Year 2025 taxes:**

Your 2025 K-1 will reflect the reversal of the stub period. To the extent you are a POF Tax client, you can continue to use POF Tax for your CY2025 tax filings and your POF Tax professional can assist you in understanding the impact of this reversal (as well as your other tax items). For non-POF Tax clients, please review your Personal Financial Profile, issued in June and posted on PNN, which can assist you in understanding the tax items that will reverse in your final Schedule K-1. In addition, the partner financial planners can also assist in helping you understand your future tax obligations.

See Attachment 3 for estimates of your taxable income for tax planning purposes.

**HR-10/Profit-Sharing Tax-qualified Retirement Plans*:**

Partners admitted on or before June 30, 2016 can view their HR-10/Profit Sharing account balance as of March 31, 2025 and accrued pending contributions on the PNN under the Accounting Channel/iPassbook/General Information screen. For those admitted to the partnership after June 30, 2016 or previously elected to transfer their HR-10 balance to their 401(k) account, the Profit-Sharing contributions are being made to your 401(k) account. The current balance can be found on the Fidelity website at www.netbenefits.com and reflects contributions through March 31, 2025.

July to December 2024 accrued contributions were made this past March. January to June 2025 accruals will be made this December and July to September accruals will be made in March of 2026.

| Partner/Principal Age | July to December 2024* | January to June 2025* | Total for FY2025 | July to September 2025** |
|---|---|---|---|---|
| Less than 36 | $7,950 | $8,050 | $16,000 | $4,025 |
| > = 36 and < 41 | 10,600 | 10,700 | $21,300 | $5,350 |
| > = 41 and < 46 | 15,350 | 15,500 | $30,850 | $7,750 |
| Age > = 46 | 23,000 | 23,250 | $46,250 | $11,625 |

*Based on age as of 7/1/2024
**Based on age as of 7/1/2025

**Ernst & Young Partnership Defined Benefit Retirement Plan (PDBRP)*:**

Your annual benefit under the PDBRP commencing at age 65 is approximately $84,288 before reduction for joint-and-survivor option, if elected. The PDBRP may also be paid in a lump sum. The estimated lump sum value at October 1, 2025 is approximately $562,541. Please note that the lump sum amount above may be higher or lower based on your age and applicable interest rates upon your actual elected payment date. In most cases the lump sum option is available for six months following your last day worked, at which time it will no longer be an available option until your next eligible retirement date.

*Please note that benefits under the HR-10/Profit-Sharing and PDBRP discussed above may be subject to Qualified Domestic Relations Order(s) which may have been filed incident to a divorce where applicable.  Payments under these Order(s), if any, will be adjusted at the time of benefit payment(s).

**Retirement Election Forms:**

Your applicable retirement election form(s) will be available under the Retirement channel in PNN approximately within two business days.

**Retirement Savings Plan:**

401(k) balance:        Available from Fidelity Investments – 800 245 9024 / www.netbenefits.com

We will top-off your 2025 401(k) contribution in accordance with your current 401(k) contribution election at Fidelity Investments to the extent we can from your net settlement earnings.  It is important that you increase your contribution percentage to the max 30% for the regular, and if you are age 50 or older in 2025, you must also increase the catch-up contribution to 30%, no later than August 31, 2025.  Please note that no contributions will be made from your net settlement earnings if you are not contributing to the 401(k) plan via payroll deductions. This contribution, if any, will be made from your final settlement of accounts on or about October 31, 2025.

We will also be paying off any outstanding 401(k) loans from your final settlement of accounts on or about October 31, 2025.

Please send an e-mail to the Partnership Operations mailbox at partnership.operations@ey.com by September 30, 2025 if you do not wish us to pay off your 401(k) loan and/or top-off your 401(k) contribution.

You may leave your 401(k) balance in the plan until you reach the Required Minimum Distribution (RMD) age, at which time payments, under current tax law, must begin over your life expectancy. You should contact Fidelity Investments at 800 245 9024 to request withdrawals and rollovers from your 401(k) account. To update or confirm your beneficiary designations, and to report any changes in address, log on to Fidelity's web site at www.netbenefits.com.

**Independence Restrictions Around Post-EY Roles:**

The US Securities & Exchange Commission (SEC), AICPA and ISEBA, have rules on independence relating to a retired or resigned partner's association with public and private audit clients, including participation on a client's Board of Directors, employment role, or providing consulting services to an EY audit client.

Please remember that Former Members continue to have responsibilities to the Firm after their withdrawal. Specifically, Section 12(a) of the Agreement of Partners & Principals of Ernst & Young U.S. LLP provides that after separation, a Former Member shall not negotiate for, accept, or continue in, a position with any entity if by so doing any continuing relationship between the Firm, any affiliate thereof or any other Operating Firm and the Former Member could impair the independence of the Firm, any affiliate thereof or any other Operating Firm as to any attest client of any thereof at that time under any then applicable professional or regulatory standards, as determined in good faith by the Management Committee, treating all such attest clients as though they were public attest clients.

Because of the complexity of many corporate entities, we highly recommend that you keep EY informed if you are contemplating joining or providing services, to any entity, in any capacity, directly or indirectly through another professional services firm. We recommend you do this for all entities, not just EY audit clients/affiliates, so the Firm can assist you with addressing independence, both currently and in the future if circumstances change. In this manner the Firm will be able to assess the need for an accelerated settlement of accounts and retirement benefits.

Please contact Robyn Zeiher (Robyn.Zeiher1@ey.com), Erica Knuth (Erica.Knuth@ey.com), or one of the partners in US Independence in advance of accepting a position so they can assist with the evaluation and advise you of any conflict or concerns.

**Insurance:**

Please see the enclosed Insurance Information insert for important information regarding benefits continuation.

**Other Matters:**

For the twelve-month period following your separation from the Firm, firm-paid outplacement career transition services are available. The Firm has retained Randstad RiseSmart to provide executive-level outplacement support. Randstad RiseSmart's tailored and action-focused program is designed for leaders at the highest levels. Once you have signed the Release and Agreement, please reach out to Cindi Meeler at cindi.meeler@randstadrisesmart.com to get started. Please contact partnership.operations@ey.com if you require assistance.

Additionally, throughout your career at EY and as an executive alum of EY, you can access career services from the EY Career Center. Services include executive career coaching, facilitated networking, and access to strategic industry opportunities via the Opportunity Marketplace. To request access, go to [www.eycareercenter.com](www.eycareercenter.com).

The allocated earnings for the current fiscal year were approved by your service line. The amount is all inclusive; that is, it represents your earnings for the fiscal year (or a part of the fiscal year) and there is no additional amount for unused vacation time.

Transition payments are payable to your estate or designated beneficiary in the event of your death prior to the end of the payment period.

If you are interested in reconnecting with former colleagues, visit and register on the Ernst & Young Alumni Network web site ([Alumni.ey.com](Alumni.ey.com)). You can learn about EY alumni events in your Region, access the Member Directory to find former colleagues and EY people, and receive alumni news and invitations to social and networking events.

If you have a club membership and will be retaining your club membership for personal use, you are responsible for all club dues and expenses after your separation.

You should plan to return your computer/laptop to EY as well as all manuals, copies of reports, and other materials that were furnished to you by the Firm.  A laptop box with return label will be sent to your home address.

The Firm requires that you cease holding yourself out as a current Partner/Principal of EY in any manner, including on social media platforms such as LinkedIn, effective with your Separation Date.



# Insurance Information
# Summary of Continuation of Benefits for Ernst & Young Partners and Principals

The following information describes the continuation of certain benefit plans offered by Ernst & Young after your separation from the Firm. Eligibility for continuation in the plans is contingent upon the fact that you were a participant immediately prior to leaving the Firm.

| | |
|---|---|
| Medical, Eyewear and Dental Plans: | If you are enrolled in one of the medical plans, eyewear plan and/or dental plans, coverage will end on the last day of the month in which separation from the Firm occurs. However, your previously elected medical, eyewear and/or dental coverage may be maintained for a specified period - generally 18 months - if you elect COBRA Continuation Coverage. You and/or your covered family members will be billed the full cost of the coverage plus an administrative fee. Additional information about COBRA Continuation Coverage will be forwarded to you at your home by Better You, the Program's Administrator. Questions about COBRA Continuation Coverage should be directed to a Better You representative at 877 339 1239. |
| Lyra Mental Health: | Lyra mental health services will continue for 90 days after your last month of employment. Lyra will be available through COBRA to continue coverage which can be elected with or without medical coverage. |
| Pathways to Parenthood and Pathways to Transition: | Coverage will end on the day separation from the Firm occurs. Reimbursement for certain eligible expenses may be available under the EY Medical Plan through COBRA Continuation for a limited period of time, by enrolling and paying the premiums on a timely basis.  Otherwise, coverage under Pathways to Parenthood ceases on last day of employment with the Firm. |
| Accidental Death & Dismemberment (AD&D) Plan: | If you are enrolled in the EY AD&D plan, coverage will end on the last day of the month in which separation from the Firm occurs. However, you may convert all or a portion of your coverage to an individual AD&D policy provided by Zurich, subject to a maximum coverage amount of $250,000. Your application must be received within 31 days of termination of coverage under this Plan. You are responsible for the full cost of the coverage. The conversion form may be obtained by contacting Zurich at 888 634 6780, option 2. Please identify yourself as an Ernst & Young partner/principal and provide the Zurich representative with the Firm's policy number GTU 5091290. |
| Disability Program: | Partner Long-Term Disability coverage ceases two months after separation from the Firm, or up to $6,000 per month of coverage can be converted to Long Term Care insurance. This coverage may be converted to an individual plan. Please contact TBG West at 800 588 7410 or EYContact@TBGWest.com for more information. |

A member firm of Ernst & Young Global Limited

| | |
|---|---|
| EY Personal Benefits: Universal Life (GUL) or Group Variable Universal Life (GVUL) Program; Auto, Home, Pet, and Identity Theft Insurance: | If you are enrolled in one or more of the EY Personal Benefits programs, coverage may continue.  EY will advise Mercer, the Program Administrator, of your Separation Date. Mercer will then bill you quarterly to continue this coverage.  Questions about your EY Personal Benefits should be directed to a Mercer customer service representative at 800 222 1615. |
| Long-Term Care MetLife: | May be continued.  For additional information, you may call TBG West at 800 588 7410 or MetLife customer service at 888 526 8495. |
| Excess Liability: | Coverage ceases as of the last day worked. |
| Group Legal Plan: | If you are enrolled in the Metlife Group Legal Plan, coverage will end on the last day of the month in which separation from the Firm occurs.  Please contact Metlife at 833 214 4175 within 31 days of your separation date for options that are available for you to continue coverage. |
| Health Savings Account: | If you participate in a Health Savings Account with Fidelity through payroll deductions, participation may continue. However, additional contributions to the Health Savings Account must be made directly to Fidelity. Questions regarding the account should be directed to Customer Service at 800 544 3716. |

## ATTACHMENT 1 - PROFORMA SETTLEMENT*

| | | | |
|---|---|---|---|
| Name | Musaddiq Rehman | Separation Date | 09/30/25 |

| | | |
|---|---:|---|
| **Beginning current account balance as of August 6, 2025:** | 86,317 | |
| FY25 Earnings: | 580,000 | |
| Total advances for FY25: | (590,804) | |
| FY26 Earnings: | 145,000 | |
| Total advances for FY26: | (77,064) | |
| Capital: | 206,000 | |
| Capital loan: | (60,800) | |
| Composite Tax Reserve: | (19,000) | estimate |
| CY25 PTET Reserve: | (26,000) | estimate |
| CY26 PTET Reserve: | (8,000) | estimate |
| **Ending balance:** | 235,649 | |

*This estimate only includes major income / reduction items and does not include capital and current account interests, deferred income accounts, insurance premiums, 401(k) reserve and 401(k) loan repayment, etc., where applicable

## ATTACHMENT 2 – PASS-THROUGH ENTITY AND COMPOSITE TAX RESERVES*

Name             Musaddiq Rehman                               Separation Date  09/30/25

**Pass-Through Entity Tax (PTET):**

| | |
|---|---:|
| Charge to net earnings settlement for your share of 2025 PTET: | (26,000) estimate |
| Charge to net earnings settlement for your share of 2026 PTET: | (8,000) estimate |
| Total | (34,000) |

The PTET charge shown is 3.73% of 2025 and 2026 taxable income. The PTET is applicable to the following states for the tax years reflected on this statement, Illinois, Massachusetts, New Jersey, New York, Virginia, and California.  You will be eligible for a refundable credit for IL, MA, NJ, NY, and VA that will offset your individual state tax obligation.  In California, the PTET credit that will offset  your individual state tax obligation is non-refundable.  Any excess of your California individual that will offset  tax liability is carried over for up to 5 years.  The total of all PTET credits is approximately equal to the PTET charge to earnings shown.  You will be allocated a share of the resulting federal PTET deduction.

**Composite Tax Reserve:**                                                                                 (19,000) estimate

This amount will be established to pay for the remaining foreign, state and local taxes to be paid by the Firm on your behalf.  A detailed calculation as to how we arrived at the tax reserve amount is enclosed in Attachment 4 for your review. The tax reserve will continue to earn interest at the current account rate.

\* Reserves do not reflect FY25 deferred income and prior year deferred income payouts, where applicable.
  To be adjusted upon settlement, when FY25 deferred income election is finalized.

## ATTACHMENT 3 - SUMMARY OF TAXABLE INCOME

Name: Musaddiq Rehman  Separation Date: 09/30/25

**Estimate of Major Taxable Income Items for Calendar Year 2025*:**

| Item | Amount | |
|---|---:|---|
| FY25 Earnings: | 580,000 | |
| Less FY25 earnings taxed on CY24 K-1 (stub period): | (68,052) | |
| Subtotal | 511,948 | |
| FY26 Earnings: | 145,000 | |
| Interest on capital (12/28/24-09/30/25): | 13,965 | estimate |
| Total Transition Payments to be paid in CY25[1]: | 145,200 | |
| 2025 MDIA interest: | 463 | estimate |
| 2024 tax preparation charges (imputed income): | 7,340 | estimate |
| 2025 CPE penalty: | (10,000) | |
| 2025 LTD firm-paid premium (imputed income): | 2,830 | |
| 2025 Excess Liability firm-paid premium (imputed income): | 1,872 | |
| 2025 Underinsured motorist firm-paid premium (imputed income): | 936 | |
| Reversal of Accumulated Book Tax Timing Differences: | (220,414) | estimate |
| Other items, non-deductible M&E, etc. for CY25: | 39,417 | estimate |
| Charge to earnings for your share of 2025 PTET: | (26,000) | estimate |
| Total Taxable Income | 612,557 | |

[1] three months @ $48,400
*Does not include FY25 deferred income and prior year deferred income payouts, where applicable

Name: Musaddiq Rehman  Separation Date: 09/30/25

**Estimate of Major Taxable Income Items for Calendar Year 2026*:**

| Item | Amount | |
|---|---:|---|
| Total transition payments to be paid in CY26[1]: | 193,600 | |
| Charge to earnings for your share of 2026 PTET: | (8,000) | estimate |
| Total Taxable Income | 185,600 | |

[1] four months @ $48,400
* Does not include deferred income payments

**ATTACHMENT 3 - SUMMARY OF TAXABLE INCOME CONT'D**

Name                              Musaddiq Rehman                         Separation Date  09/30/25

**To the extent you were on foreign assignment and may still have tax equalization that needs to occur, this package does not reflect that.**

This schedule provides an estimate of only the major components of your taxable income for the calendar year(s) shown in this attachment. These amounts will be reported on your Schedule K-1 along with some other adjustments for capital and current account interest, profit sharing contributions, etc., and including but not limited to penalties for learning, independence violations, etc.

Please remember that there are no tax withholdings on transition payments, therefore you will need to set aside enough funds (in addition to any estimated taxes you may have paid) to cover the tax liability.

## ATTACHMENT 4 - COMPOSITE TAX AND PTET RESERVE CALCULATION WORKSHEET

| | | |
|---|---:|---|
| **Name**       Musaddiq Rehman | **SEPARATION DATE:**  09/30/25 | |
| FY25 Earnings: | 580,000.00 | |
| Less FY25 earnings taxed on CY24 K-1 (stub period): | -68,052.00 | |
| FY26 Earnings: | 145,000.00 | |
| Interest on capital (12/28/24-09/30/25): | 13,965.00 | estimate |
| Total transition payments to be paid in CY25: | 145,200.00 | |
| Total transition payments to be paid in CY26: | 193,600.00 | |
| 2025 MDIA interest: | 463.00 | estimate |
| 2024 tax preparation charges (imputed income): | 7,340.00 | estimate |
| 2025 CPE penalty: | -10,000.00 | |
| 2025 LTD firm-paid premium (imputed income): | 2,830.00 | |
| 2025 Excess Liability firm-paid premium (imputed income): | 1,872.00 | |
| 2025 Underinsured motorist firm-paid premium (imputed income): | 936.00 | |
| Reversal of Accumulated Book Tax Timing Differences: | -220,414.00 | estimate |
| Contribution for January 2025 - June 2025: | 23,250.00 | |
| Contribution for July 2025 - September 2025: | 11,625.00 | |
| Other items, non-deductible M&E, etc. for CY25: | 39,417.00 | estimate |
| Total Taxable Income: | 867,032.00 | |
| | | |
| Estimated Total Tax Liability:* | 14,739.54 | |
| Sub-Total Estimated Tax Reserve: | 14,739.54 | |
| | | |
| Conservation Factor: | 1.25 | |
| **Total Estimated Tax Reserve:** | **19,000.00** | |
| * Uses a 1.7% estimated factor | | |
| | | |
| **State of residency:** | FL | |
| **PTET %:** | 3.73% | |
| | | |
| Total Taxable Income subject to CY25 PTET: | 673,432.00 | |
| **Total Estimated CY25 PTET:** | **26,000.00** | |
| | | |
| Total Taxable Income subject to CY26 PTET: | 193,600.00 | |
| **Total Estimated CY26 PTET:** | **8,000.00** | |

## <u>RELEASE AND AGREEMENT</u>

I, Musaddiq Rehman, hereby acknowledge that I have been fully informed of all the relevant facts and circumstances regarding my separation from ERNST & YOUNG U.S. LLP and ERNST & YOUNG LLP, their affiliates, predecessors and successors (hereinafter collectively referred to as "EY" or "the Firm").  I understand, agree, and am satisfied with the terms set forth in this Release and Agreement (the "Agreement"):

1.    The Firm and I acknowledge and agree that pursuant to Section 11(b)(i) of the Agreement of Partners and Principals of Ernst & Young US LLP dated December 23, 2023 (the "APP") that governs my relationship with the Firm, I shall separate from the Firm effective September 30, 2025.  For good and valuable consideration set forth in the letter from Partnership Operations dated August 11, 2025 (hereinafter the "Letter"), I hereby fully release, acquit, and forever discharge the Firm, its predecessors, successors, assigns, transferees, present and former partners, employees, and/or agents, whether acting on behalf of the Firm or in their individual capacities (collectively, the "Firm Entities"), of and from any and all claims, demands, rights, actions, causes of action, debts, accounts, covenants, contracts, agreements, promises, damages, costs, losses, reimbursements, compensation, liabilities and expenses, including attorneys' fees, of any and every kind, nature or description whatsoever, in law or in equity, which I may have had, may now have or may hereafter have or assert on account of any matter whatsoever, whether known or unknown, from the beginning of time to the date of this Agreement (hereinafter collectively referred to as "Claims") including, but without in any way limiting the generality of the foregoing, Claims for discrimination or other wrongdoing under or pursuant to the provisions (as they now exist or as they may from time to time be amended) of Title VII of the Civil Rights Act of 1964, the Employee Retirement Income Security Act ("ERISA"), the National Labor Relations Act, the Family and Medical Leave Act of 1993, the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), the Older Workers Benefit Protection Act of 1990, the Equal Pay Act of 1963, the Americans With Disabilities Act, the Vocational Rehabilitation Act of 1973, the Lilly Ledbetter Fair Pay Act of 2009, the Consumer Fair Credit Reporting Act, the Sarbanes-Oxley Act of 2002, all as amended; or any other federal, state, city or local laws, or regulations securing my rights to be free from discrimination on the basis of race, color, sex, sexual orientation, gender expression or identity, age, religion, citizenship, national origin, disability or any other basis protected by applicable law, and any and all other Claims arising out of, by reason of, or in any manner connected with or related to (i) the past, present or future hiring, employment or

separation policies or practices of EY, or (ii) my employment, partnership or other affiliation with, and/or my separation from, the Firm.

2. The foregoing notwithstanding, nothing herein shall relieve EY of its obligations set forth herein, in the Letter or in the APP that relate to Former Members, including those contained in Section 14 of the APP.

3. I agree that the terms of the APP remain in full force and effect, including but not limited to the restrictions and obligations contained in Sections 12 and 13 regarding positions with clients, solicitation/service of clients, solicitation of EY personnel, non-competition, discussions of Member's departure, and confidentiality and intellectual property. I also agree that to the extent I am a participant in the Ernst & Young U.S. LLP Members' Top-Hat Plan, the restrictions and obligations set forth therein remain in full force and effect.

4. I acknowledge that I am not otherwise entitled to certain consideration set forth in the Letter, and that such consideration is sufficient for the release of all Claims set forth in Paragraph 1. That consideration is not and shall not be interpreted as an admission that any of the laws or regulations referred to in Paragraph 1 apply to me.

5. Except as provided for below, I agree that this Agreement and the terms and conditions of this Agreement shall remain confidential, and shall not be directly or indirectly disclosed in any manner whatsoever to any person or entity not a party to this Agreement, except: (a) as mutually agreed upon in writing by the parties to this Agreement; (b) pursuant to a valid court order or a lawfully-issued and enforceable subpoena; (c) to law enforcement or other government authorities; or (d) as required by law. I may disclose the terms of this Agreement to my attorney, financial advisor, and/or immediate family member as long as prior to any such disclosure, that individual promises to treat such information as confidential and not to disclose it.

6. I understand that nothing in this Agreement (or in any other agreement) shall be construed to prohibit me from (i) filing a charge with any government or self-regulatory agency charged with enforcing any law (such as the EEOC, the NLRB, or any other federal, state or local agency): (ii) participating in any agency investigation or action; or (iii) reporting or providing truthful information to any governmental agency or self-regulatory organization, an attorney general, an attorney retained by me, or making other disclosures that are protected under applicable law or regulation. I acknowledge and agree, however, that the

consideration provided to me for this Agreement shall be my sole relief, and that I will not be able to obtain any relief or recovery from any such investigation or proceeding, including the costs or attorneys' fees, except that I do not waive my right to collect monies pursuant to a government program or award.

7. I agree not to disparage or encourage or induce others to disparage the Firm Entities and/or Ernst & Young Global Limited ("EY Global"). For the purposes of this Agreement, the term "disparage" includes, without limitation, comments or statements that are public or could become public that would adversely affect in any manner (i) the business, or business reputation, of the Firm Entities and/or EY Global; or (ii) the personnel of the Firm Entities and/or EY Global. Nothing herein prevents me from providing truthful information to any law enforcement, government agency, or self-regulatory organization, or in response to a subpoena or court order or as otherwise required by law or regulation.

8. At the request of EY or its affiliates, I agree to cooperate fully with EY or its affiliates in connection with any mediation, arbitration or other legal or regulatory proceeding or inquiry or investigation that involves EY, its affiliates or their officers, directors, partners, employees or agents, about which I may have knowledge or information. Such cooperation may include, without limitation, appearing at a mutually agreeable time and location with counsel for EY or for an interview or assisting in preparation for depositions, hearings and/or trials related to any claim, action, or litigation or regulatory proceeding in which EY, its affiliates or their officers, directors, partners, employees or agents are, or may become, a party. EY will reimburse me for reasonable travel and incidental expenses in connection with such cooperation. If I am subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony or provide documents (in a deposition, court proceeding or otherwise) which in any way relate to my relationship with EY and/or the Firm Entities, I will give prompt notice of such request to Andrea H. Stempel, Associate General Counsel, at Andrea.Stempel@ey.com, or her successor.

9. All disputes concerning or arising out of this Agreement, including disputes regarding the enforcement of the Agreement, shall be resolved through mediation and/or arbitration as set forth in Section 19 of the APP.

10. I acknowledge and agree that I (i) have carefully read this Agreement in its entirety and understand its terms; (ii) have had ample time (not less than forty-five (45) days) (which time shall not be extended without the written authorization of a member of Partnership

-3-

Operations) to consider and accept the separation terms set forth in the Letter and this Agreement; (iii) have been advised to review the information provided to me in a Disclosure Statement from the Firm dated July 29, 2025; (iv) have been advised to consult with an attorney prior to entering into this Agreement and have done so (or have had the opportunity to do so); and (v) am accepting this separation offer voluntarily and without any pressure or coercion on the part of anyone associated or connected with the Firm in any way.

11. I understand that for a period of seven (7) days following the execution of this Agreement, I may revoke the Agreement, and the Agreement shall not become effective or enforceable until this seven (7) day revocation period has expired (the "Effective Date"). I understand that EY is not obligated to provide the consideration for this Agreement until the revocation period has expired (without exercise of my right to revoke the Agreement). I understand that if I decide to revoke the Agreement, I must send written notice by email to Diane Blessinger in Partnership Operations at Diane.Blessinger@ey.com.

12. This Agreement may be executed in separate counterparts and each such counterpart shall be deemed an original with the same effect as if all parties had signed the same document. A scanned signature or digital signature sent by electronic mail (along with the entire Agreement) shall have the same force and effect as an original signature.

13. This Agreement may not be modified or changed orally. No other promises or agreements shall be binding unless in writing and signed by both the Firm and me after the Effective Date of this Agreement. If any part, provision, or paragraph of this Agreement is held to be illegal or in conflict with any law or otherwise invalid or unenforceable, such part, provision, or paragraph shall be considered severable and shall not affect the remaining parts, provisions, or paragraphs of this Agreement, which shall continue in full force and effect.

14. I acknowledge and agree that EY may assign this Agreement or any of its rights and obligations under this Agreement in whole or in part, to (i) any other EY Firm, (ii) any affiliate of EY, and/or (iii) any entity resulting from, or established as part of, a restructuring, sale, or transfer of an EY Firm, in whole or in part.

15. This Agreement shall be construed in accordance with the laws of the State of Delaware.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of:

Dated: _____     _____
                                                                     Musaddiq Rehman

ERNST & YOUNG U.S. LLP

Dated: _____     By: _____
                                                                     Diane Blessinger

ERNST & YOUNG U.S. LLP

Dated: _____     By: _____
                                                                     Diane Blessinger